TRULINCS 81518053 - GOODMAN, ANDREW JOSEPH - Unit: BRO-D-A

------------------------------------------------------------------------------------------------------------

FROM: 81518053
TO: ~~████████████████████~~
SUBJECT: MOTION TO DISMISS - ESTABLISHMENT CLAUSE 1
DATE: 08/06/2013 04:55:35 PM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

       Plaintiff;

vs.

ANDREW GOODMAN,

       Defendant.
------------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E D N Y

★ AUG 1 2 2013 ★

BROOKLYN OFFICE

DOCKET NO: 12-CR-614 (MKB)
Hon. Margo Brodie, U.S.D.J.

"COMBINED"

MOTION TO DISMISS DEFECTIVE INDICTMENT BASED UPON CONSTITUTIONAL VIOLATION OF THE
ESTABLISHMENT CLAUSE,          THE FIFTH AMENDMENT, FOURTEENTH AMENDMENT and EQUAL PROTECTION
PROVISIONS OF THE UNITED STATES CONSTITUTION BASED UPON ELEMENTS WHICH ARE A MATTER OF FIRST
IMPRESSION and SWORN AFFIDAVIT IN SUPPORT OF MOTION TO DISMISS.

     COMES NOW THE DEFENDANT, Andrew Goodman, appearing pro-se, and in support of the above captioned motion
hereby avers as follows:

     1. The defendant has pending before the court, a two count criminal indictment charging violation of 18 U.S.C. ss:
2422(b) and 2423(a), (hereinafter referred to as "2422" and/or "2423").

     2. The defendant asserts that the indictment in this case is constitutionally - jurisdictionally - defective, as the statutes
being utilized are "unconstitutional" as applied herein and violate the First Amendments, Establishment Clause, the Fifth
Amendments, Due Process Clause, the Fourteenth Amendments Due process clause, as applied to the attendant state Issues,
and the Equal Protection Clause, of the United States Constitution, based upon the unique circumstances of this case.

     3.     The mere citation of a statute alone in an indictment is not sufficient to cure a defective indictment in the Second
Circuit, (See: U.S. v. Hernandez, 980 F.2d 868, 871; U.S. v. Berlin, 472 F.2d 1002, 1008; and U.S. v. Wright, 248 F.3d 765,
766).

     4.     If this court concludes that 18  U.S.C. 2422(b) and 2423(a) is improperly applied in this case, then error would be
plain error and the indictment must be dismissed. The error is plain error if it is clear and obvious, (See: Thomas, 274 F.3d at
667, citing Johnson v. U.S. 520 U.S. 461, 467-68). In this case the error is glaringly obvious in light of the facts of the case, as
applied to the indictment and it's allegations contained therein.

     5.     18 U.S.C. ss: 2422(b) addresses, inducing a minor to engage in sexual activity. 18 U.S.C. 2423(a) addresses,
transportation of a minor to engage in sexual activity across state lines. Congress did not intend to criminalize legally
constituted common-law marriages, and/or Jewish religious marriages, as elements of 2422(b) and 2423(a), and as such  2422,
and 2423, are in violation of the Establishment, Due Process and Equal Protection Clauses of the Constitution, rendering the
indictment in the instant matter void.

     6.   In order to understand the basis for this motion it is necessary at this juncture to set forth various descriptive
homosexual lifestyle terminology. In the context of homosexual relationships, the husbands is described as either "husbands" or
"tops". The wives are at times referred to as "partners" and/or described as "bottoms". For the purposes of this motion the
defendant utilizes the term husband or defendant when referring to the defendant, and partner, when referring to ████████
████████, whom the government mischaracterizes as a victim in this case. (The defendant - in his role as husband - shall
hereinafter be referred to as the "Defendant" and ████████, - in his role as wife - shall hereinafter be referred to as the "Partner").

--------------------------------------------------------------------------------------------------------------

7.  The government clearly sets forth that the following acts took place as to counts one and two. That the defendant, received telephone communications from his partner which originated in Colorado, and terminated in New York State, as well as telephone communication which originated in New York State and terminated in Colorado. Additionally, the government alleges that the defendant transported his partner to the State of New Jersey, with two witnesses. The government unwittingly sets the stage for this motion via admission of these facts that the defendant [1] called his partner in Colorado, [2] that the defendant received calls from his partner in Colorado, [3] Traveled with his partner to New Jersey, (The date of the travel being "Valentines Day" and [4] engaged in such travel with two witnesses.

8.  Whether by error or design, the government "admits" (emphasis added) on the face of the indictment, that the 4 facts set forth at paragraph 7 supra, took place. At first glance these 4 acts may lead the unknowledgeable to think that the defendant communicated with and traveled with a minor in interstate commerce, for a sexual purpose. In reality the government admits a Jewish Religious Marriage occurred.

COMMON-LAW MARRIAGE ISSUE

9.  In fact no illicit travel occurred. The alleged telephone calls from Colorado were in fact discussions regarding the homosexual union of the defendant and his partner. The contract to marry was established during these telephone communications. It is clear that such a contract is "valid" (emphasis added) in the State of Colorado, as Colorado recognizes common-law marriage. Additionally, Colorado recognizes civil unions between any two adults. The defendant notes for the record that while common-law marriage is not recognized in New York State, the State of New York will honor a common-law union that would be valid in a state wherein common-law marriage is recognized. (See: Mott v. Duncan, 51 N.Y. 2d 289, 292, see also; H. Clark, The Law of Domestic Relations, ss: 2.4 at 48 regarding couples who hold themselves out to the world as married).

PARENTAL CONSENT ISSUE

10.  It is anticipated the United States may raise the issue of parental consent as to the partner entering into a common-law marriage contract. In the State of Colorado, wherein the agreement to marry occurred, via the numerous telephonic communications alleged by the government, common-law unions are recognized. By reciprocity Colorado law is recognized in the State of New York. (See: Mott v. Duncan, supra). The "Marriage Contract' becomes germane to the common-law marriage element. Under Colorado, and New York Law, contracts entered into by minors, without parental consent are governed by the "Common Accepted Practice Rule" (emphasis added) sometimes called, "Implied Consent", (emphasis added).

11.  Implied consent is a major factor in this case. The defendant was forced to plead guilty to an underlying New York State indictment, which contained a minimum of 144 alleged sexual liaisons between the defendant, and his partner. The following elements of implied consent become paramount to the issue of parental consent.

12.  In this Federal case, - as well as the underlying State Case, which the United States references as part of this case, - it becomes glaringly obvious that the following acts took place. [1] The defendant and the partner interacted for a period of years. [2] The defendant and his partner lives on the same street only a few doors apart. [3] The partners parents knew that the defendant, and his partner, were engaged in a sexual relationship. [4] The partners parents could have come to the defendants house, which was only a few feet from their home, and stopped the relationship at any time over a period of years, and never did. [5] The partners of the parents knew, that on at least "144" (emphasis added) occasions, sex had taken place, and never once complained, or went to the police. Common sense would imply that after the first sex act, the next 143 acts were parentally sanctioned, - parents are Orthodox Jews - under Jewish Relgious law, by consent, or implied consent. [6] The parents of the partner, as well as the Brooklyn District Attorney, and New York City police, have encapsulated this case in a cocoon of statements wherein the parents and the authorities repeatedly state that they were aware that expensive gifts were being given to the partner over a period of years, costing thousands of dollars, the parents did not object to. (This point is discussed below in the Jewish Marriage argument, regarding the Jewish Marriage Act, called "Kiddushin", and the practice of giving the proposed bride/partner an item worth one "Perutah" - one penny - to express love and the marriage proposal). The Orthodox Jewish Parents of the defendants partner, knew at all times that the marriage was imminent, and that the parents acquiesced to the Jewish Religious union.

13.  Argument as to the Jewish Religious union not being recognized under New York State or Federal Law is spurious as the Establishment Clause, which is the foundation of this motion, as it is applied to Jewish Religious marriages, supports the Religious marriage. The fact that the partners parents knew that on at least 144 occasions the partner had sex with the defendant, just a few doors down from the parents home, begs the question, which act is offensive to the parents? Is it the 1st time pre-marital sex was had, the 25th, 50th, 100th, or the 144th time. The Orthodox parents allowed their orthodox son to

TRULINCS 81518053 - GOODMAN, ANDREW JOSEPH - Unit: BRO-D-A

--------------------------------------------------------------------------------

sleep with the defendant. While this issue may be distasteful to the average citizen, it is common practice in the Orthodox Jewish community, (See: DA OUTS ORTHODOX PERV'S, BY: Susan Edelman, New York Post, July 21, 2013). Having clearly established the implied consent of the partners parents, we now move on to the religious marriage issue.

JEWISH RELIGIOUS MARRIAGE ISSUE

14.   The defendant and the partner are orthodox Jews. As such orthodox Jews may marry at 13 years of age. In fact if one Orthodox Jew asks another Orthodox Jew to wed, the recipient of the request need not accept the offer, and will still be obligated to consummate the marriage. There is no parental approval required for a Orthodox Jewish Religious union.

15.   Jewish Religious Law clearly states, relationships wherein two people above the age of 13 agree to marry, that Jewish Law recognizes the union as valid. The following rules apply: [1] Only one of the two people need consent. [2] All that is required is that a gift worth one Perutah be given to the other party. This was done as evidenced by the allegations in this case. [3] No consent by parents is required. [4] There must be two witnesses, this is evidenced by the allegations in this case wherein the defendant, his partner, and two others traveled to New Jersey, with the defendant and his partner. [5] The travel took place *on Valentines Day, a traditional* marriage day in the United States. [6] The union took place in the *New Jersey Resort hotel and* witnesses were present as stated in the evidence of this case. [7] The union resulted in a honeymoon, feasting, celebratory concert attendance, and visits to the partners family in New Jersey. A valid Jewish Wedding and Marriage occurred.

16.   The question raised herein is can the U.S. Congress codify a law that impacts Jewish Religious Marriages?

RECOGNITION OF HOMOSEXUAL UNIONS IN NEW YORK STATE

17.   The State of New York recognizes Homosexual marriage. The  Federal Government cannot invalidate the homosexual union under the law of the State of New York. In fact Barack Hussein Obama, the President of the United States, recognizes that Homosexual Unions are valid. One may assume Obama's cabinet, which includes the DOJ's Attorney General, who brings this case, is flip flopping on this issue, by pressing this prosecution. No matter what premise is considered the facts remains that Congress, Barack Obama, Eric Holder, A.U.S.A. Tyler Smith, and Loretta Lynch, cannot pass or enforce a law regarding application of 2242, and 2243, as to this defendant, as  2242 and 2243 as applied in the instant matter as it invalidates Jewish Religious law. The rights enjoyed by the defendant under the First Amendments, Establishment Clause, Fifth Amendments Due Process protections, Fourteenth Amendments Due Process protection, - state issues,- as well as the Equal Protection provisions of the United States Constitution, demand the indictment in this case be dismissed.

TRULINCS 81518053 - GOODMAN, ANDREW JOSEPH - Unit: BRO-D-A

---------------------------------------------------------------------------------------------

FROM: 81518053
TO: Davis, ████████████████, ████
SUBJECT: MOTION TO DISMISS ESTABLISHMENT CLAUSE 2
DATE: 08/06/2013 04:55:50 PM


ESTABLISHMENT CLAUSE

18.  The Second Circuit has established a line of cases that hold the mere citation of a statutory section is  not sufficient to cure a defective indictment, (see: Paragraph 3 supra). The United States Supreme Court has consistently held that error is plain, if the error is clear and obvious, (See: Paragraph 4, supra). The United States Supreme Court has held that when a potential jurisdictional defect - such as a defective indictment, as applied to the establishment clause,- is neither noted or discussed in a federal law, the decision does not stand for the proposition that no defect exists, - matters of first impression are *reviewable by this court*, - (see: Arizona Christian School Tuition Organization v. Winn, 131 S. Ct 1436, 1448).

19.  The United States Supreme Court has held in Establishment Clause cases, that the Lemon test applies. The Lemon test applies to all  uniform religious issue matters. Lemon is the touchstone case regarding the tripartite test of [1] secular legislative purpose, [2] primary rules that neither advance or inhibit religion and [3] excessive government entanglement with religion.

20.  Additionally, the Supreme Court has held that the Larson test is to be considered as a counterpart to the Lemon Test, in Establishment Clause questions. (See: The Architecture of the Establishment Clause, 43 Wayne Law Review, 1451, 1463, wherein the Larson Test is a counter part in establishment clause - equal protection questions. See also: Fred Mark Geddicks, The Permissible Scope of Legal Limitations on the Freedom of Religion or Belief in the United States, 19 Emory International Law Review, 1187, 1189-90, and see: Niemotko v. Maryland, 340 U.S. 268, 272).

21. Defendant (Andrew Goodman) has standing in this matter based upon the establishment clause wherein his free exercise of religion which has been denied by the application of 2422, and 2423, to the defendant via the instant indictment. To establish standing all Goodman need accomplish is to establish the fact that [1] he has suffered an injury, [2] that the injury is traceable to the federal law under challenge, (i,e 2422 and 2423) and [3] that it is likely the injury will be redressed by a favorable decision, (See: Arizona Christian School v. Winn, supra).

22.  The harm to this defendant is more than a mere conflict with States Rights or Federal Law. The harm here is significant as 2422, and 2423, are used in this case to enforce a Congressional Law (2422 and 2423) that excludes and disfavors Jewish Religious Homosexual Marriages, recognized by the State of New York and State of Colorado, which Congress does not have the power to preclude.

23.  The application of 2422, and 2423, to defendant Andrew Goodman,  expressly condemns his Jewish Religious marital union and exposes him to disfavored treatment, which suffices to establish the type of direct injury to create *Establishment Clause, Due Process* and Equal Protection standing. The jurisdiction of this court is called into question, when *the court allows an unconstitutional application of 2422, and 2423, to occur as is presented by the question argued herein*.

24.  The uniqueness of this question renders it a matter of first impression, as to the question being one which is closely fitted to acceptable establishment clause issues which have repeatedly stood as justiciable in courts of the United States. The compelling interest of Goodman and other religious Jewish Homosexuals, similarly situated, requires dismissal of the indictment in this case,(See: Grutter v. Bollinger, 539 U.S. 306, 333).

25.  The indictment, and it's unconstitutional reliance upon 18 U.S.C. 2422, and 2423, in the instant matter affronts the federal constitution, which the people of the United States did ordain and establish, and this court must adhere to the peoples desires to prevent any  threatened injury to homosexual rights, especially in light of the Jewish Religious questions presented herein, (See:  Williams v. Rhodes,  393 U.S. 23, 29).

26.  There is no doubt that [1] the homosexual, Jewish Religious Marriage took place, [2] that the evidence of the union is essentially admitted by the United States in it's pleadings and evidence, [3] that the partner acquiesced, even though under Jewish Religious Law such acquiescence is not required, [4] that items of value were exchanged under Jewish Law, [5] that the Orthodox Jewish parents of the partner, recognized the Marriage and gave their consent by allowing the years long sexual relationship to take place and continue, [6] and, that the marriage was witnessed by two persons on Valentines Day, at a Resort Casino in New Jersey. In and for these reasons the application of 2422, and 2423, is unconstitutional in this case, and the

TRULINCS 81518053 - GOODMAN, ANDREW JOSEPH - Unit: BRO-D-A

--------------------------------------------------------------------------------

indictment must be dismissed with prejudice.

## INVALIDATE STATE CONVICTION

27.  It is anticipate that the United States may attempt to rely upon the underlying State plea, and conviction, as support for the application of 2422, and 2423, in this case. The defendant respectfully requests that this Honorable Court note, that the defendant is simultaneously submitting a motion under New York State Criminal Procedure Rules, Section 440.10, and 440.20, to vacate the "unlawfully Induced and ineffectively counseled " (emphasis added) plea, and sentence, in the underlying state case, based upon the same premise alleged supra.

28.  The 440 motion will additionally allege that Charles Hynes, the District Attorney of Kings County, the New York City Police Department, and their agents, officers and assigns, intentionally, and willfully, conspired to violate the civil rights of the defendant, by selectively prosecuting the defendant, while at the same time hiding from the public, hundreds of similar so-called sex crimes in the Orthodox Jewish community, as the covered up and surreptitiously prosecuted criminals were influential Jewish voters and contributors of Charles Hynes, and that Charles Hynes did in fact conspire to persecute, as well as prosecute, this defendant in Kings County, State Supreme Court, while failing to inform the State Court judge, the defendant or the defendants ineffective counsel, that Hynes was co-operating and essentially intentionally entrapping the defendant into a situation that would lead tot he instant federal prosecution, (See: New York Post Article at paragraph 13 supra).

WHEREFORE ALL PREMISE CONSIDERED, the defendant prays entry of an ORDER dismissing the indictment in this matter with prejudice.

SWORN TO UNDER THE PENALTIES OF PERJURY, pursuant to 28 USC ss: 1746

Dated August____7___2013

By:_____
    Andrew Goodman, Pro-se.
    Reg. No: 81518-053
    MDC Brooklyn
    PO Box 329002
    Brooklyn, New York 11232

## PROOF OF SERVICE

The defendant has been granted leave to proceed pro-se in this manner. The defendant is indigent and does not have "free" access to a copier, postage or envelopes. The defendant has sent the original of the foregoing to the Clerk of the Court, 225 Cadman Plaza, Brooklyn, New York, 11021, for service upon all interested parties, via filling or PACER. The mailing was recorded in the Unit 5 North, Legal Mail Log Book, pursuant to the prisoner mail box rule, on the date appearing infra.

Dated: August___7___2013

By:_____
    Andrew Goodman.