1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,        )
                    Plaintiff,   )   12CR614 (MKB)
                                 )
                                 )
V.                               )   United States Courthouse
                                 )   Brooklyn, New York
                                 )
ANDREW GOODMAN,                  )   FRIDAY, OCTOBER 16, 2015
                                 )   12:00 noon
                    Defendant.   )
_____ )


TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
BEFORE THE HONORABLE MARGO K. BRODIE
UNITED STATES DISTRICT JUDGE


APPEARANCES:
FOR THE GOVERNMENT:  ROBERT L. CAPERS
                     United States Attorney
                     BY:  TYLER SMITH
                     Assistant United States Attorney
                     Eastern District of New York
                     271 Cadman Plaza East
                     Brooklyn, New York 11201


FOR THE DEFENDANT:   FEDERAL DEFENDERS OF NEW YORK, INC.
                     BY:  MICHAEL PADDEN, ESQ.
                     Standby Counsel
                     One Pierrepont Plaza, 16th Floor
                     New York, New York 11201


THE COURT REPORTER:  NICOLE CANALES, RPR, CSR
                     225 Cadman Plaza East
                     Brooklyn, New York 11201
                     cnlsnic@aol.com

Proceedings recorded by mechanical stenography, transcript
produced by Computer-Assisted Transcript.

```
                    Proceedings                      2

 1          THE CLERK:  This is Criminal Cause for Sentencing,

 2   in Docket Number 12CR614, USA versus Andrew Goodman.  Counsel,

 3   please state your name for the record, as well as probation.

 4          MR. SMITH:  Tyler Smith for the United States.  Good

 5   afternoon, your Honor.

 6          THE PROBATION OFFICER:  Good afternoon, your Honor.

 7   Angelica Denise (phonetic) for United States Probation.

 8          THE COURT:  Angelica Denise?

 9          THE PROBATION OFFICER:  Angelica Denise.

10          THE COURT:  Good afternoon, Ms. Denise.

11          MR. PADDEN:  For Mr. Goodman, your Honor, Michael

12   Padden, Federal Defenders.  And let me just apologize for my

13   being here later than I should have been.  I've been literally

14   in front of Judge Vitaliano for over an hour.

15          THE COURT:  I understood that, Counsel.

16          MR. PADDEN:  I think my colleagues translated that

17   information.  I do apologize.  It was a three-defendant case,

18   and there was nothing I could do.

19          THE COURT:  The fact that you were before

20   Judge Vitaliano was communicated to me.  Good afternoon.

21          And good afternoon, Mr. Goodman.

22          MR. PADDEN:  And with me is Sara Howard.  I don't

23   know that you have met her.

24          THE COURT:  I have not.

25          MR. PADDEN:  She's an investigator with our office
```

Proceedings                                        3

1    and helping me with the case.

2         THE COURT:  Okay.  Good afternoon, Ms. Howard.

3         We're here for sentencing today.  And, first, I want

4    to review all the documents that I have, to make sure that we

5    are in agreement, that I have reviewed everything that was

6    submitted with regard to the sentencing of Mr. Goodman.

7         I have the PSR, which was prepared on

8    June 11th, 2015.  I have an addendum to the PSR, which was

9    dated September 11th, 2015.  I have a recommendation from the

10   Probation Department as to what they believe the sentence of

11   Mr. Goodman should be.  I know the parties have that.  I'm

12   sharing that with the parties now.

13        And I'll give you a minute, Mr. Padden, to review

14   that with your client, as soon as I have reviewed all of the

15   documents that I have in my possession.

16        MR. PADDEN:  Thank you, Judge.

17        THE COURT:  I have a letter from the government,

18   dated October 8th, 2015.  I have a letter from Mr. Padden on

19   behalf of Mr. Goodman, dated September 10th, and filed

20   September 11th, 2015.  Attached to that letter are a number of

21   letters in support of Mr. Goodman from his mother, his father,

22   his sister, and his aunt, as well as a number of friends, and

23   I have read them all.  I also have a letter from the parents

24   of the victim in this case.  I have a letter from Brian

25   Murphy, also on behalf of the victim in this case.  I have

```
                        Proceedings                    4
```

1    another letter from -- it's a five-page letter from a

2    Mr. Weiner, also in support of the victim in this case, and I

3    have a letter from the victim in the case.

4              Am I missing any documents?

5              MR. SMITH:  No, your Honor.

6              MR. PADDEN:  I don't think so, your Honor.

7              THE COURT:  Okay.  Mr. Padden, have you had an

8    opportunity to review the presentence report in the addendum

9    with your client?

10             MR. PADDEN:  I have, your Honor.

11             THE COURT:  The PSR calculates the guideline range

12   as a level 29, criminal history category 2, and a

13   corresponding guideline range of 97 to 121 months.  In view of

14   the fact that Mr. Goodman faces a mandatory minimum sentence

15   of 10 years, the effective guideline range is 120 to

16   121 months.

17             Are there any objections to the PSR?

18             MR. PADDEN:  Your Honor, none beyond what's

19   reflected in my initial letter to probation, which adopted the

20   addendum.

21             THE COURT:  In the addendum.

22             Anything from the government?

23             MR. SMITH:  No, your Honor.

24             THE COURT:  Okay.  I accept and adopt the PSR.

25   Consistent with the PSR's calculation, my calculation of the

Proceedings                                              5

1   guideline, the advisory guideline range, is a level 29, 3

2   criminal history point, for a criminal history category of 2,

3   which produces a guideline range of 97 to 121 months;

4   supervised release term of 5 years to life; fine range of

5   15,000 to 150,000, and $100 special assessment.

6          The probation report also provides for a mandatory

7   restitution, but I understand that no affidavit of loss was

8   submitted, Mr. Tyler?

9          MR. SMITH:  Yes, your Honor.  I have spoken to the

10  victim's family about it, and they've indicated they don't

11  want to submit an affidavit of loss, in connection with the

12  case.

13         THE COURT:  Okay.  And is the victim here today?

14         MR. SMITH:  Yes, your Honor.

15         THE COURT:  Okay.  I do have the victim statement,

16  but the victim also has a right to speak, so if the victim, or

17  anyone on behalf of the victim, would like to address

18  the Court, you just have to let me know, and I will give you

19  the opportunity later in the proceedings to do so.

20         Turning to the sentencing factors, I have considered

21  all of the relevant factors that are set forth by Congress at

22  18 U.S.C. Section 1353(a), including the advisory guideline,

23  to ensure that I impose a sentence that is sufficient, but not

24  greater than necessary, to comply with the purpose of

25  sentencing.  These purposes include the need for a sentencing

Proceedings                                                      6

 1   to reflect the seriousness of the crime, to promote respect

 2   for the law, to provide just punishment for the offense, to

 3   deter criminal conduct, and to protect the public from future

 4   crimes by Mr. Goodman, and to promote the rehabilitation of

 5   Mr. Goodman.

 6            In addition to these guidelines and policy

 7   statements, I must -- and I have also considered the nature

 8   and circumstances of the offense, the history and

 9   characteristics of Mr. Goodman, and the need to avoid

10   unwarranted sentence disparities among similarly situated

11   defendants.  And, also, I have looked at the types of

12   sentences that are available.

13            Mr. Padden, do you wish to be heard further to your

14   submission as to the application of those factors?

15            MR. PADDEN:  Briefly, I think, your Honor.

16            THE COURT:  Okay.  You may stay seated, but you can

17   stand also, if you prefer.

18            MR. PADDEN:  I think I'm more comfortable standing,

19   more accustomed to standing.

20            THE COURT:  Understood.

21            MR. PADDEN:  Your Honor, the statutory mandatory

22   minimum of ten years here is within the guideline range, and

23   we appreciate the fact that the government has taken a

24   position that a sentence there would be acceptable to them.

25   The only reason I'm commenting beyond that is because of the

Proceedings                                    7

1    very recent -- within the last few days, letters submitted by

2    the victim, and his family, and others seem to be advocating

3    for more than that; and I think to address that, for the

4    record, for them, for the Court, I do have some comments to

5    make.

6            As you well know, Mr. Goodman was sentenced in the

7    state supreme court for much of the underlying conduct that

8    forms the basis for this case.  He was sentenced by a judge in

9    state supreme court by the name of Martin Murphy.  I don't

10   know if you're familiar with Martin Murphy at all,

11   Judge Murphy?

12           THE COURT:  I'm not.

13           MR. PADDEN:  I am.  I know him from my state court

14   days at the Legal Aid Society.  I know him to be a strong,

15   fair-minded individual, and certainly no pushover.  I know

16   there was a lot of disappointment expressed at the sentence he

17   gave Mr. Goodman on the state court charges; but that he, with

18   all the facts, the nature of the relationship between he and

19   the victim, the overall circumstances of the case, obviously

20   decided that two years was an appropriate sentence for that

21   conduct.

22           The statutory maximum for each of those counts was

23   seven years.  I don't know that if he had given seven years we

24   would even be here today.  I never quite established how this

25   case got before us in the federal court, but I believe it was

Proceedings                                    8

1    in part because of the disappointment that was expressed

2    regarding Judge Murphy's sentence, but I do know for a fact it

3    was a well considered sentence by a strong judge and a

4    fair-minded judge.  And the case here before you, if I may

5    characterize the situation, is essentially -- added the

6    element that a telephone was used in interstate commerce to

7    encourage the continuation of the relationship, which was the

8    underlying facts of the case that was considered in sentencing

9    in the state court.  And I just wanted to kind of put that

10   into perspective here for all concerned.

11            That said, Judge, I certainly see no reason, no

12   need, no merit to any argument that a sentence above the

13   mandatory minimum would be appropriate here.  Ten years is a

14   long time.  Mr. Goodman has been in prison already for five

15   years.  He's served his two-year sentence on the state case.

16   Now he's before you facing a ten-year mandatory minimum.  This

17   is an extremely long period of time.  And I think the fact

18   that a judge considering the facts underlying this case

19   sentenced him in what he thought was an appropriate fashion,

20   to the two years in state court, is something to be

21   considered, not only by your Honor but by all those concerned

22   that sort of expressed more severe measures to be imposed.

23            Beyond that, Judge, the government has asked for a

24   substantial period of supervised release.  The mandatory

25   minimum supervised release here is five years.  I would submit

NICOLE CANALES, CSR, RPR

Proceedings                                                9

1   that in and of itself is a substantial period of time.  When

2   put together, in terms of the point in the age at which

3   Mr. Goodman is here today -- he's now 31 years of age.  He

4   still faces continuing in prison for many more years before

5   his sentence is completed, and then being put on supervised

6   release.  I, frankly, think, Judge, that five years of

7   supervised release will tell what we need to know here.

8           I'll get to what and how he has developed since his

9   incarceration, but, certainly, to put it in one way, Judge, if

10  he successfully completes five years of supervised release, I

11  think the proof is there that the sentence would have been --

12  what we would hope to have been accomplished in such a

13  sentence would be proven.  If he were to violate supervised

14  release, I'm sure it would happen within the five-year period

15  of time.  I don't expect he will, but I think that

16  Mr. Goodman, for his own rehabilitative purposes, needs some

17  view of the future under which he can move on with his life,

18  without the so-called actual shackles of imprisonment and the

19  figurative shackles of being on supervised release.

20          I think, personally, Judge, that five years is

21  enough time for that to be accomplished, and it is a

22  substantial period of time on supervised release.  So I would

23  advocate, Judge, for the sentence of 10 years, 5 years

24  supervised release.  About Mr. Goodman, you well know that

25  I've been involved in this case for quite a while.  I've come

Proceedings                                    10

1    to know Mr. Goodman.  I find Mr. Goodman to be a serious,

2    contemplative, respectful person, client who has put a lot of

3    thought into his actions and deeds over the last decade of his

4    life and has grown immensely.

5              There is some suggestion in the letters that were

6    recently presented to the Court that there have not been

7    acceptance of responsibility, not enough appreciation for what

8    he did; and they point to, among other things, things that he

9    said and did in motions in this case.  I can assure the Court

10   -- and I think Mr. Goodman will be able to convince you as

11   well -- that he very much accepts responsibility for his

12   actions in this case, is very remorseful and concerned about

13   the victim in this case.

14             The motions that seem to be the subject matter of

15   some of the concerns here were motions he filed when he was

16   not represented by me.  As you well know, he went pro se for a

17   period of time.  And, frankly, Judge, they were ill-advised

18   motions that resulted from his falling somewhat under the swag

19   of jailhouse lawyers.  And when I say "jailhouse lawyers," I

20   don't mean in the colloquial sense; those in jail that think

21   they know a lot about the law but are there for their

22   problems.  This was an actual lawyer in the prison who was

23   advising Mr. Goodman and pushed the notion of some of the

24   motions he filed before the Court.

25             And, frankly, Judge, he hit a point where he finally

1  realized the following of that whole process; that's when he

2  came to me and said he did not want to pursue this, he didn't

3  want to proceed in such a way, he wanted to plead guilty, he

4  wanted to accept responsibility, he wanted to literally avoid

5  the travail that the victim would endure during a trial here,

6  he wanted to put an end to it, and he wanted to accept his

7  responsibility.  That's when he indicated through me to the

8  government that he wanted to plead guilty and that he wanted

9  me to resume my representation of him.

10         He disavowed the actions that had taken in the form

11  of motions that were, as I said, ill-advised by people he was

12  listening to at the jail.  I think when he speaks to you,

13  you'll get a better sense of that.  That said, Judge,

14  Mr. Goodman -- and, certainly, when defendants, former

15  clients, take the route of proceeding pro se, I think we all

16  shudder, because I think more times than not in this

17  courthouse the proceedings become a circus.  I think you saw

18  in Mr. Goodman someone who was as professional -- without

19  regard to the merits of the arguments, but someone who

20  presented them to your Honor in as articulate and as organized

21  a way as he possibly could have under the circumstances.

22         I don't think he ever displayed any disrespect to

23  the Court in doing so.  I think he was always very meticulous

24  in his preparation and presentation of his motions, and I

25  think, clearly, always respected the Court in its

Proceedings                          12

1    determination in those motions.  That's been consistent with

2    my experience with him.

3              This has been a difficult case for any lawyer, given

4    the subject matter underlying.  I have appreciation and

5    sympathy for the parents in the case, for the victim in the

6    case.  It is a difficult subject matter to deal with.  But yet

7    I found that throughout I had a very professional relationship

8    with Mr. Goodman.  He was always, as I said before, very

9    respectful of me, and of your Honor, and of the Court.  And I

10   think he tried to present what he had been convinced were

11   legal arguments that could be made on his own behalf, which I

12   told him I, frankly, wouldn't make, which is why he proceeded

13   pro se.

14             He resolved that in his mind.  He resolved that in a

15   respectful way.  Recognized the following of that and

16   proceeded as he had, since avoiding the unnecessary trial that

17   would otherwise occur here.  I do think -- as I said before,

18   he has remorse, which he will express to you, and I think that

19   still facing a continued substantial portion of his life in

20   prison that ten-year sentence is more than adequate to punish

21   him.

22             And I think five years supervised release is more

23   than adequate to ensure that when he gets out of jail, he'll

24   take the right steps in his life.  He's a smart person.  He's

25   an educated person.  He's an intelligent person.  He can move

Proceedings                    13

1   on here.  And, obviously, he will get the appropriate

2   treatment, counseling.  Programs in prison will help him

3   towards that.  And I think that enough has been posed here to

4   do that.  Thank you.

5           THE COURT:  Thank you, Mr. Padden.  Now, I did say

6   I'd give you a few minutes to review the Probation

7   Department's recommendation with your client.  Have you had an

8   opportunity to do that?

9           MR. PADDEN:  I read it, Judge; he's read it too.

10          THE COURT:  Okay.

11          MR. PADDEN:  I don't take contests.

12              (Pause in proceedings.)

13          MR. PADDEN:  We're all set, Judge.

14          THE COURT:  Okay.  Before I give the government an

15  opportunity to be heard, Mr. Goodman, I'll give you an

16  opportunity to speak to me.  You have the right to do so, but

17  you certainly don't have to.  It's up to you.

18          THE DEFENDANT:  Thank you, your Honor.  I appreciate

19  the opportunity.  There's a couple things I want to touch on

20  today that I thought about, a lot of times I think in these

21  past years.  You know, I thought about what contributed

22  towards my making such terrible decisions that effected not

23  only the victim and his family, effected myself, effected by

24  parents, and I can't be there with my grandmother, who is very

25  sick.  I mean, I read the victim's letter.  I read -- I

Proceedings                                    14

1    understand what he's going through, and I know it's my fault,

2    and that doesn't sit well with me.

3           You know, anybody could say they have remorse.

4    Anybody can get up here and say they're sorry, and, you know,

5    I'm sitting here and thinking about these things because I

6    don't want to make the same mistakes again, and I won't make

7    the same mistakes again.  It's very real to me.  What he feels

8    is more important to me than anything else.  If he hurts

9    because of me, that matters.  I care about other people on

10   this planet.  I have empathy.  And I don't want to be

11   responsible for causing anybody pain.

12          I have to register for the rest of my life as a sex

13   offender, which means I'll be discriminated against when it

14   comes to employment and housing.  Because of decisions that I

15   made, I have destroyed in many ways the rest of my life

16   because of foolish and misguided notions that I was under,

17   just a completely flat out wrong way of thinking.  And I have

18   a rewind button, and I can't undo this, and I would give

19   anything to undo this.  If my life in prison would take away

20   his pain, I would ask you to put me in life in prison, if that

21   would take away his pain, but I don't think it will, and I

22   don't know what will, and I wish I did.

23          And I really -- I want to apologize to my parents;

24   you shouldn't have to take care of your 31-year-old son.  I'm

25   sorry for being such a screw-up.  Sorry to my sister, who I'm

Proceedings                          15

1   not there for.  I want to express my gratitude to Michael, who

2   has been phenomenal every step of the way.  I don't think I

3   could have paid for better representation, honestly.  He's

4   just an amazing attorney, and I'm really grateful that he

5   stood by me throughout all of this.  And I'm grateful to Sara,

6   who has been there for me and seen me through the hard times.

7   And I'm grateful to my family and my friends who stayed there

8   and, you know, come under fire from people, while sticking up

9   for me, just for being there for me, and I'm really

10  appreciative for that.

11          I know -- Seth, you've really been there for me,

12  man, in every way, and I appreciate that.  And I'm grateful to

13  you, your Honor, for having so much patience with me

14  throughout this process.  Believe it or not, I even am

15  grateful to Mr. Smith; he treated me extremely professionally.

16  Even though I was a pro se defendant, he never belittled me,

17  and I never felt mocked or put down by him, and I'm grateful

18  to him that he is helping, even if it's at my detriment.

19          And, you know, some of my motion practice was

20  extremely foolish, and it was misguided.  And the guy calmed

21  me and even calmed Mr. Smith.  The guy's a professional

22  three-time fraudster who is just a real con artist, and he

23  realized -- that's why you get a 5K1 letter -- that the good

24  guy is doing 11 years in prison for a reason.  It was terribly

25  foolish.  I wish -- I don't know.  I can't do anything to

Proceedings                                              16

1    prove myself more than that, other than my actions, and in the

2    end, I know I'll never be back here again.  This has been a

3    tremendously unpleasant experience.

4            Prison is terrible, especially, you know, being gay

5    in prison, and just -- you know, things are difficult.  Not an

6    easy life.  And I have -- I have spent -- this is not the only

7    thing that I have ever done in my life.  Although this is

8    extremely terrible, and this is the reason I'm here, I'm more

9    than just one action.  I'm the total sum of all my actions,

10   and I have spent my time, my entire life, trying to help

11   everybody I could, and I'm going to continue that, and I do

12   that even in jail.  And I'll continue to -- even if people

13   tell me I'm too nice, I'll continue to do that.  And I have

14   value to society.  I have value.

15           I can contribute, and I want to contribute, and I'm

16   going to do good things, and I give you my word on that one.

17   And I'm not going to ask your Honor for any mercy, because I'm

18   going to just accept whatever judgment you place before me

19   today, because you've been very fair throughout this process,

20   and I trust in whatever you do, whatever you decide.  And I

21   just thank you, and I am really sorry.

22           THE COURT:  Thank you, Mr. Goodman.

23           Mr. Smith, would you like to be heard further?

24           MR. SMITH:  Yes, your Honor.  As Mr. Padden said,

25   the government agreed not to take a position on sentencing, so

Proceedings                    17

1   I won't take a position as to a custodial sentence.  I do have
2   some comments about the term of supervised release.  You know,
3   the statute sets a minimum term of supervised release of five
4   years and a maximum up to life.  I don't think five years is a
5   long time for a case like this.  Many judges impose
6   significant terms of supervised release.  I think the evidence
7   here makes a term of supervised release of at least 20 years
8   appropriate, not only to make sure the defendant's monitored
9   but also to make sure he's getting the mental health treatment
10  that he needs.
11          Based on my involvement in the case, I have no
12  reason to doubt that the defendant didn't think he was hurting
13  anyone when this was going on, but that's absolutely the thing
14  that troubles me; because over the course of years, he did
15  terrible, damaging things, all believing that they weren't
16  hurting anyone, and that's why the government thinks that a
17  significant term, a term of supervised release of at least
18  20 years is necessary to make sure that if he is in situations
19  to make bad choices like that again, there is someone telling
20  him that that is a bad choice.
21          Because even based on what he said today, he
22  couldn't recognize that at the time, and I don't know that
23  there's an indication that he would recognize it in
24  circumstances that weren't exactly the same as this, you know,
25  going forward.  That's all I have to say on that.

Proceedings                                    18

1          THE COURT:  Okay.  Thank you.

2          Mr. Padden, would you like to be heard further?

3          MR. PADDEN:  No, Judge.  I mean, I note the obvious,

4    that the Probation Department -- I still take the position

5    that five years is significant enough.  The Probation

6    Department recommended ten years supervised release; I point

7    that out, but that's the Court's discretion.

8          THE COURT:  Okay.  After assessing the particular

9    facts of this case and in light of all the relevant --

10         MR. SMITH:  Your Honor?

11         THE COURT:  Yes.

12         MR. SMITH:  Can I consult with the victim's family

13   to see if they want to make a statement?

14         THE COURT:  Absolutely.  As I have already

15   indicated, the victim and or his family has the right to speak

16   to the Court.

17              (Pause in proceedings.)

18         MR. SMITH:  Thank you, your Honor.  I had a chance

19   to that consult with them, and they're going to rely on their

20   written submissions.

21         THE COURT:  Okay.  Which I've read all of them.

22         After assessing the particular facts of the case,

23   and in light of all the 3553(a) factors, including the

24   sentencing guidelines, and considering the victim's statement,

25   and all the other statements made on behalf of the victim, as

Proceedings                                    19

1   well as the statements made on behalf of Mr. Goodman, I do

2   conclude that a sentence of ten years in jail and ten years of

3   supervised release is an appropriate sentence.

4            I note that the government did enter into a plea

5   agreement with Mr. Goodman, agreeing to an advisory guideline

6   range of 97 to 121 months, and that the government agreed not

7   to ask for or move to have me impose a sentence above the

8   guideline.  I also note that the Probation Department's

9   recommendation is that I sentence Mr. Goodman to 10 years, and

10  that I also impose 10 years of supervised release.

11  Mr. Padden, I appreciate you asking that I only impose 5, and

12  I appreciate the government asking that I only impose -- that

13  I do impose 20.  I also acknowledge the request of the victim,

14  for a life in prison sentence, and from Mr. Weiner, for a

15  sentence of 20 years.

16           In reaching this decision, it was challenging, to

17  say the least, but I do believe that a sentence of 10 years in

18  custody and supervision, with a number of conditions, which

19  I'll get to in a minute -- but one of the conditions will be

20  that you will have absolutely no contact with the victim or

21  any of his family.  I believe the sentence reflects the

22  seriousness of the crime that you committed, Mr. Goodman, and

23  that it sufficiently punishes you for that crime, and that it

24  will deter you from other criminal conduct; because not only

25  will you have to spend 10 years in custody on this sentence,

Proceedings                                                    20

1   but the supervision and the conditions that I'm imposing

2   afterwards would mean that you will be strictly supervised for

3   an additional ten years.

4           I took into account the fact that the victim was so

5   very young at the time you began interacting with him, and

6   that he was only 15 at the time the crime of conviction took

7   place.  Now, you've stated to me -- and it appears that the

8   government believes -- that you didn't know you were hurting

9   the victim.  I'm not sure that I believe that.  Reading all of

10  the letters submitted by your parents and your friends, it's

11  clear to me that you're a very smart individual and that

12  you're also very caring, and that may be one of the reasons

13  why you were able to commit the crime that you did.

14          Many of the letters from your family members and

15  friends gave concrete examples of you caring for, and taking

16  care of others, and putting others ahead of you.  I get the

17  impression that you knew that you were hurting the victim, but

18  you were more concerned about yourself, what that was doing

19  for you, rather than focusing on how much you were hurting the

20  victim in this case.  I took into account the fact that you

21  have caused long-lasting injuries to this individual.  In the

22  victim's own words, you've ripped the life out of him.  You've

23  basically ruined his childhood.

24          This is a young man who is going to have to find the

25  strength to put his life back together, all because of what

1   you've done to him, and that is something that you will have

2   to live with.  But this victim has been injured to such an

3   extent that I can't even begin to somehow address that.  I

4   took all of that into account, but I also looked at all the

5   other aspects of your life, based on all of the letters that I

6   received from your family members; the fact that despite your

7   challenges with ADHD, you managed to get an associates degree

8   in college, and the many ways in which you've attempted to

9   help others; the fact that you were gainfully employed before

10  you were incarcerated, and I balanced all of those factors.

11          And while at the end of the day -- and I'm speaking

12  to the victim now -- that I didn't sentence Mr. Goodman to a

13  life in prison, I do believe that the sentence is appropriate.

14  I do hope that you will be able to somehow find the strength

15  to get your life back on track, that you don't give

16  Mr. Goodman the power by ruining your life forever, that you

17  are and will be able to put this behind you now that he's been

18  sentenced and will be prohibited from ever contacting you or

19  your family members, and that you can go on with your life and

20  make something of yourself.

21          According to what everyone has said about you, you

22  are a very smart young man who did very well in school until

23  this happened to you.  I know you have supporting family

24  members, friends, and others who are helping you through this,

25  and so you should lean on them and find the strength to be a

Proceedings                                    22

1   success.  That will be your sweet revenge for what Mr. Goodman

2   did to you.  My role is only to punish him for the crime and

3   to do so in a manner that Mr. Goodman hopefully understands

4   and appreciates the hurt that you've (sic) caused, will take

5   responsibility, which you appear to have done, and will learn

6   from this.

7           I do hope, Mr. Goodman, that you spend your time in

8   custody not only learning from your mistake but figuring out

9   how to live a life, a law-abiding life, and how to make sure

10  that you never ever put anyone else in the position that

11  you've put this victim.  You're a smart young man; I could

12  tell that from the written work you've submitted to me, the

13  way in which you argued your case to me, and I do believe that

14  you have a lot to offer to society and that you should be

15  given the opportunity to do so.  But first you must be

16  punished for the crime, and that is why I impose a sentence of

17  10 years in prison, 10 years of supervised release.

18          It is the longest period of supervised release I

19  have imposed on anyone, but I believe it's necessary in this

20  case, because there will be a period of adjustment once your

21  term of incarceration ends, and I want to ensure that you're

22  being supervised by the Probation Department for a lengthy

23  period of time, just to make sure that you can adjust back to

24  society and stay out of trouble.  Hopefully 15 years from now

25  I'll get a letter from the victim telling me that he's doing

Proceedings                                                    23

1    better, and I'll get something from you too, Mr. Goodman,

2    showing me that the trust I'm placing in you by only

3    sentencing you to 10 years will mean something.

4            If I'm wrong, you'll be back before me, and I'll

5    have the opportunity then to consider imposing a lengthier

6    period of time.  But somehow I don't think you will be back; I

7    think you will serve your time.  I hope that you will

8    recognize your wrong and that you will grow as a person.  The

9    special conditions I am imposing, one of which I've already

10   indicated what it is, you're not to have any contact with the

11   victim in this case or with his family members.  This means

12   that you can't attempt to contact any of them in person,

13   communicate by letter, telephone, e-mail, the Internet,

14   through a third party, none of it.

15           If for any reason you decide that you need to be in

16   contact, you need to discuss that with the Probation

17   Department.  You can only contact them if you have the

18   permission of the Probation Department.  You shall participate

19   in a mental health treatment program; I believe it's necessary

20   under the circumstances.  And that may include participating

21   in a treatment program for sexual disorders, as approved by

22   the Probation Department.  You shall contribute to the cost of

23   such services rendered and also to any psychotropic

24   medications that are prescribed if, in fact, you're reasonably

25   able to contribute to the cost.

Proceedings                                    24

1      You shall cooperate in securing any applicable third

2  party payment.  You must disclose all your financial

3  information and documents to the Probation Department to

4  assess your ability to pay.  And as part of the treatment

5  program, you may be asked to participate, and this is a

6  treatment program for sexual disorders.  You may be asked and

7  shall participate, if required by the Probation Department, in

8  a polygraph examination to obtain information necessary for

9  risk management and correction treatment.  You must comply

10 with the law that requires you to register as a sex offender.

11      Mr. Padden, do you know if it was determined, what

12 level?

13      MR. PADDEN:  That was litigated in the state court,

14 Judge, and I think he was classified at level 3.

15      THE COURT:  As a level 3 sex offender registrant, I

16 believe you're required to register for life.

17      THE DEFENDANT:  Every 90 days I have to show up.

18      THE COURT:  Every 90 days you do have to show up.

19 You must comply with all of those requirements.

20      You shall not associate with any child under the age

21 of 18 unless a responsible adult is present and you have prior

22 approval from the Probation Department.  If you cohabitate

23 with any individual who has minor children, you must inform

24 that other party of your prior criminal history.  They must be

25 told.  Do you understand?

Proceedings                          25

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  You must also notify the party that

3    you're prohibited from associating with any child who is under

4    the age of 18, unless a responsible adult is present.  You

5    shall also submit your person, property, house, residence,

6    vehicle, papers, computers, and any other electronic

7    communication, or data storage devices, or media, or office to

8    a search conducted by a United States Probation Officer.

9          Failure to submit to such a search may be grounds

10   for revocation of any release.  You must warn any and all

11   occupants that the premises, if you reside with someone or

12   work with others, may be subject to a search, pursuant to this

13   condition.  Do you understand that, Mr. Goodman?

14         THE DEFENDANT:  Yes, ma'am.

15         THE COURT:  A probation officer may conduct such a

16   search pursuant to this condition only when a reasonable

17   suspicion exists that you have violated a condition of your

18   supervision and that the areas to be searched contain evidence

19   of this violation.  And any search by the Probation Department

20   must be conducted at a reasonable time and in a reasonable

21   manner.  Mr. Smith, there's a forfeiture provision in the plea

22   agreement.  Is there anything to be forfeited?  To the extent

23   that there is, Mr. Goodman, you have to comply with the

24   forfeiture provision in your plea agreement.  The government

25   will let you know if there is.  And you are required,

Proceedings                                              26

1   Mr. Goodman, to make a full financial disclosure to the

2   Probation Department officer.

3              And, lastly, you shall not possess a firearm,

4   ammunition, or any destructive device.  I do not impose a

5   fine.  I find, Mr. Goodman, that you're not capable of paying

6   a fine.  I do impose the $100 special assessment.

7   Mr. Goodman, you can appeal your conviction if you believe

8   that your guilty plea was somehow unlawful, or involuntary, or

9   if you believe there's some other fundamental defect in the

10  proceeding that was not waived by your guilty plea.  Under

11  some circumstances, a defendant has a right to appeal his

12  sentence.  However, a defendant may waive that right, and you

13  did waive that right when you entered the plea agreement with

14  the government.

15             Such waivers are generally enforceable, but if you

16  believe there's some theory that you can make as to why it

17  shouldn't be in this case, you can make that argument to the

18  appellate court.  Any notice of appeal must be filed within

19  14 days of the judgment of conviction.  I expect that the

20  judgment will be filed today or within 14 days of the

21  government's filing of the notice of appeal.  If you request,

22  the clerk of the court will prepare and file notice of appeal

23  on your behalf.

24             If you cannot afford the cost of an appeal, or for

25  appellate counsel, you have the right to apply for leave to

Proceedings                                    27

1   appeal in forma pauperis, which means that you can apply to

2   have the filing fee waived.  And an appeal, you can ask for

3   court-appointed counsel.

4           I believe there's an open count.

5           MR. SMITH:  The government moves to dismiss the open

6   count.

7           THE COURT:  The Court grants the government's motion

8   and dismiss Count 2 of the Indictment.

9           Are there any other matters that should be resolved?

10          MR. SMITH:  I just want to note, your Honor, there

11  wasn't a forfeiture provision in the plea agreement.

12          THE COURT:  Anything else?

13          MR. PADDEN:  A couple matters, Judge, that are more

14  important to be considered, housekeeping.  First of all -- and

15  it was addressed in the addendum to the presentence report,

16  but it's of paramount concern that the presentence report be

17  edited to remove from the front page that notation of detainer

18  by New York State Department of Corrections.  We've all agreed

19  that doesn't exist.  I've spoken to everybody about it.  This

20  report goes to the institution with Mr. Goodman, and I'm sure

21  someone will look no further than the first page, and that

22  would limit his ability to get into vocational programs,

23  counseling, which is what we want him to get, beyond any

24  limits that he has in prison.

25          THE COURT:  I will ask the Probation Department

Proceedings                                         28

1   officer, but my understanding is the addendum took care of

2   that by noting there is no detainer.

3            THE PROBATION OFFICER:  That's correct, your Honor.

4   We don't object to defense counsel.  We can go ahead and

5   revise the front page so that it will not include a detainer.

6            MR. PADDEN:  That would be appreciated.  Secondly,

7   Judge, with respect to designation, the probation report --

8   the recommendation the Court mentions, the sex offender

9   program at Devens, but that doesn't take place until the very

10  end of period of sentence.  Mr. Goodman asked me to ask

11  the Court to recommend incarceration at the facility at

12  Danbury, and he does so only because that's the only place

13  where his family is in a position to travel to, to visit him;

14  and he fears if he goes any further than that, he won't see

15  his family again until the sentence is over.

16           And he will not be in the program at Devens until

17  the end of the sentence, and it's possible -- and I understand

18  that there are processes in the works that may have the same

19  sex offender program at Danbury as well.  To the extent that

20  the sentence complies with your Honor's direction with respect

21  to the sex offender treatment, in the interim, if you could

22  recommend -- and I understand it's up to the Bureau of

23  Prisons; they don't follow, necessarily, your recommendations,

24  but they consider it -- that the institution at Danbury -- and

25  I believe it's FCI Danbury.

Proceedings                                29

1          THE COURT:  As opposed to any other institution in

2    the northeast, where his family can visit?

3          MR. PADDEN:  That we determined is probably the

4    closest and the easiest for the family, so we prefer that.  If

5    that's not available, the closest one in the northeast.

6    Generally, because of his residence, are supposed to consider

7    the northeast.  We'd like to have a recommendation that if

8    possibly it be Danbury.

9          THE COURT:  I'm happy to make the recommendation,

10   with the understanding that the U.S. Marshals --

11         MR. PADDEN:  I understand, Judge.

12         THE COURT:  -- will make the determination based on

13   what they believe is appropriate, but I do recommend that

14   Mr. Goodman be placed either in Danbury or in a facility in

15   the northeast, so that his family and friends can visit him.

16         MR. PADDEN:  Thank you, Judge.  There was a period

17   of time in the beginning of this case where Mr. Goodman was

18   back and forth between state custody and federal custody

19   before he was actually finished with his state sentence.  I

20   ask that the Court -- respectfully ask the Court to consider

21   recommending that that time run concurrently.

22         THE COURT:  I'm not sure that I'm -- I'm following

23   you with regard to what specific time you're referring to.

24   Are you referring to the time period where he was in federal

25   custody but still serving time?

Proceedings                                            30

1            MR. PADDEN:  Yes.

2            THE COURT:  He was here on a writ?

3            MR. PADDEN:  He was here on a writ in the beginning,

4    Judge, and he wasn't released from -- there was a period of

5    time when he was under both, in both custody.  He was both in

6    federal and state, but I think the time is being credited to

7    the state, because he was here on a writ.  You can make that

8    time concurrent.

9            THE COURT:  As I understand it, Counsel, he wasn't

10   released from state custody until October of 2012; correct?

11           MR. PADDEN:  I believe that's correct, Judge.

12           THE COURT:  So that when he was first brought into

13   federal custody, in July of 2012, he was still serving out his

14   state sentence.

15           MR. PADDEN:  Correct.

16           THE COURT:  And so what you're asking me to do is

17   overlap these time periods?

18           MR. PADDEN:  Yes.

19           THE COURT:  I reject your application.  I believe

20   it's appropriate that Mr. Goodman serve whatever state time

21   was allotted to him on his state sentence, which he served, I

22   believe, a little less than the full time period.  So you were

23   in custody on the state matter through October of 2012;

24   correct?  And I believe the writ was satisfied so that you

25   were then in federal custody after that happened, so you've

NICOLE CANALES, CSR, RPR

Proceedings                          31

1   been getting credit for the time of your federal sentence

2   based on the end of your state sentence, and I'm not willing

3   to give you credit for the time spent on your state sentence

4   in federal custody.  Your federal time and your state time, in

5   fact, should run consecutively not concurrently.

6            MR. PADDEN:  I think that's it for us.

7            THE COURT:  Anything else?

8            MR. PADDEN:  No thank you.

9            THE DEFENDANT:  May I say one more thing?  I just

10  want to reiterate my remorse, in case there was any doubt of

11  my sincerity.  I meant what I said.  I really am sorry, and I

12  want everybody to know that.

13           THE COURT:  I do believe that you are sorry,

14  Mr. Goodman.

15           Is there anything else from the government?

16           MR. SMITH:  No, your Honor.

17           THE COURT:  Okay.  Then we're adjourned.

18           Good luck, Mr. Goodman.

19                  (Proceedings adjourned.)

20

21                        *  *  *

22      I certify that the foregoing is a true and correct
    transcription of the record from proceedings in the
23  above-entitled case.

24   /s/ Nicole Canales          March 8, 2016
       Nicole Canales               Date

25