# Federal Defenders
## OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

Tamara L. Giwa
*Executive Director*

Michelle A. Gelernt
*Attorney-in-Charge*

June 29, 2026

**VIA ECF & EMAIL**

The Honorable Margo K. Brodie
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *United States v. Andrew Goodman*, No. 12-CR-614 (MKB)

Dear Chief Judge Brodie:

I write on behalf of defendant Andrew Goodman to request early termination of supervised release under 18 U.S.C. § 3583(e)(1). Mr. Goodman has been supervised for five years. During this time, he has been employed, lived independently, and participated in his court-mandated mental-health treatment. He has been charged with a violation only once. That violation is currently pending and alleges that, in August 2025, he animatedly and disruptively voiced his frustrations during group therapy about the effectiveness of certain aspects of his mental-health treatment, which led to his termination from that treatment provider. But Mr. Goodman has remedied that alleged violation in the ten months since. He has found a new therapist that he pays for with his own insurance, has submitted to polygraph examinations as he must as a condition of his supervised release, and has otherwise remained in compliance with his release conditions.

We submit that after five years' supervision, another five years is unnecessary to achieve supervised release's aims of rehabilitating Mr. Goodman and protecting the community's safety. Supervision can and should be terminated now. In the alternative, Mr. Goodman's pending violation should be dismissed with no additional sanction or modification.

For the last five years, Mr. Goodman has taken important steps to rehabilitate himself. He has maintained a stable residence. He has refrained from using drugs and overcome his history of substance use. And he has been employed at HelpUSA, which operates a men's shelter on Randalls Island that serves formerly incarcerated men, including sex offenders. Mr. Goodman has been promoted to a supervisory position and has been commended for his performance.

We are attaching a letter of recommendation from his supervisor, Avery Jones, which explains his contributions at work and his value as an employee. *See* Ex. A. (The letter was initially written as an employer reference for Mr. Goodman; Ms. Jones has consented to our using the letter in support of early termination of supervised release.) Ms. Jones remarks that Mr. Goodman is effective in his position because he can personally relate and empathize with his clients. "What distinguishes Mr. Goodman is the way he has transformed his life experiences into motivation to serve others," she writes. "He brings compassion without judgment and

*United States v. Goodman*, No. 12-cr-614 (MKB)
June 29, 2026

understands the importance of structure, accountability, and support qualities that are essential when working with vulnerable populations." *Id.* Ms. Jones observes that Mr. Goodman is passionate about helping his clients because they are currently facing the same obstacles that he has had to overcome and is still overcoming.

Mr. Goodman attempted to obtain employment with the New York City Department of Homeless Services ("DHS") as a coordinator and liaison at DHS's men's intake shelter. The job was to screen men entering the shelter system for eligibility and mental-health diversions. Mr. Goodman, however, was denied the position because he lacked a Certificate of Relief from Disabilities from New York State, which he cannot obtain while on federal supervision.

Since his alleged violations in August, Mr. Goodman has attended mandatory sex-offender specific therapy twice a week at New York Counseling for Change, where he has continued to make strides. He reports that his individual therapy with his new therapist has been markedly helpful for changing his thinking and behavior. Counseling for Change is not a contracted provider with the Eastern District Probation Department. Accordingly, Mr. Goodman has been paying for this treatment through his insurance. If supervision is terminated, he intends to continue receiving treatment from Counseling for Change on his own. He recognizes the benefits of therapy and has shown for nearly a year that he is prepared to assume its costs now and in the future.

Counseling for Change states that he has attended treatment regularly; been attentive, cooperative, and engaged; and been open to the therapeutic concepts being presented and feedback from his therapist and group participants. *See* Ex. B (filed separately under seal because it is a confidential treatment record). Mr. Goodman's support for his group participants is also noted. *See id.* Indeed, Mr. Goodman believes strongly in the importance of helping similarly situated people reform themselves and clear the barriers to reentering society after sustaining a criminal conviction, especially a sex offense. To that end, in September 2025, he received a provisional license from New York State to work as a Certified Recovery Peer Advocate ("CRPA"). *See* N.Y. Office of Addiction Servs. & Supports, *Become a Certified Recovery Peer Advocate*, https://oasas.ny.gov/recovery/become-certified-recovery-peer-advocate. Mr. Goodman intends to complete the necessary 500 hours' fieldwork and remaining testing to become a fully licensed CRPA. He also has been informed by Counseling for Change that it would consider hiring him to work as a CRPA, but only after his supervised release has terminated.

Mr. Goodman's probation officer confirmed that he has participated in polygraph examinations since our last status conference in March, as he must as a special condition of his supervision. He did not pass the first polygraph examination but passed the second. The Probation Department informs me that Mr. Goodman is complying with his conditions of supervised release, including those relating to his mental-health treatment and monitoring.

Early termination of supervised release would be consistent with the Sentencing Commission's recent amendments to § 5D1.4 of the United States Sentencing Guidelines. There, the Commission recommends that the Court conduct an independent assessment of the need for continued supervision and weigh the following factors:

(i) any history of court-reported violations over the term of supervision;

2

(ii) the ability of the defendant to lawfully self-manage (e.g., the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges);

(iii) the defendant's substantial compliance with all conditions of supervision;

(iv) the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision;

(v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and

(vi) whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant.

U.S.S.G. § 5D1.4 cmt. n.1(B).

On balance, these factors favor early termination. For the past five years, Mr. Goodman has shown he can lawfully manage himself, comply with his release conditions, and engage in pro-social activities. He has maintained employment, obtained a professional license, and kept a stable, independent residence. He has refrained from drug and alcohol use. He has participated in sex-offender-specific mental health treatment twice a week. Even after he was terminated by one treatment provider, he promptly found a new, supportive therapist whom he pays with his own insurance. He intends to continue seeking assistance from this therapist regardless of his supervision. He recognizes the importance of individual therapy and credits it for positively changing his thinking and behavior. Terminating supervision will also make him eligible for employment he currently cannot pursue, such as working full-time as a CRPA or with a government agency or contractor.

Mr. Goodman does not pose a threat to public safety. The instant offense was committed over a decade ago. He has had no arrests or other interactions with law enforcement. According to the Probation Department's risk assessment in Mr. Goodman's violation report, he falls within a low/moderate category, a cohort with just a 2% arrest rate for a violent crime. VOSR Rpt. 15.

In short, Mr. Goodman has proved that he no longer requires post-release supervision. He has made use of the Probation Department's assistance and is now able to take responsibility for his needs on his own. Nor does he need court supervision to avoid violating the law. Early termination is thus consistent with the rehabilitative and public-safety purposes of supervised release, neither of which is meaningfully advanced by still supervising this rehabilitated and non-dangerous person. *See generally United States v. Johnson*, 529 U.S. 53, 59 (2000) ("Supervised release fulfills rehabilitative ends, distinct from those served by incarceration."); *Morgan*, --- F.3d ---, 2026 WL 391890, at *4 ("Those who no longer need the rehabilitative purposes of supervised release may qualify for early termination."). Terminating supervision early will instead be salutary and "prevent probation system resources from being wasted on supervisory

3

*United States v. Goodman*, No. 12-cr-614 (MKB)
June 29, 2026

services for releasees who do not need them" U.S.S.G. Introductory Commentary for Part D—Supervised Release (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 124, at 54 (1983)). We therefore request that the Court terminate Mr. Goodman's supervised release under 18 U.S.C. § 3583(e)(1).

In the event the Court does not end Mr. Goodman's supervision, we respectfully request that the Court dismiss the violation charges. *See generally United States v. Bermudez-Plaza*, 221 F.3d 231, 234 (1st Cir. 2000) (holding that district court has authority to decide whether revocation proceedings are initiated or withdrawn); *United States v. Ceasar*, 776 F. Supp. 3d 147, 155-56 (E.D.N.Y. 2025) (same); *United States v. Jones*, 2016 WL 3962776 (D. Conn. July 21, 2016) (observing that district court has discretion to dismiss VOSR charges); *United States v. Austin*, 1997 WL 139014 (E.D.N.Y. Mar. 18, 1997) (exercising discretion to dismiss pending VOSR charges). Mr. Goodman's alleged outburst and termination from therapy was aberrational conduct within the five-year span of his supervision. After being discharged from therapy, he made amends by starting over with a new therapist and provider and submitting to polygraph examinations as instructed. He has remedied his alleged violations and is not a threat to any person or member of the public.

Following the Probation's Department recommendation and putting him in prison for aberrational conduct that occurred ten months ago would not advance the rehabilitative interests of supervised release. If anything, imprisoning Mr. Goodman will hinder his rehabilitation. It will cut him off from his therapist. He will lose his job. And he will likely lose his housing. Those enormous personal costs will yield little benefit. It will not help reform Mr. Goodman, who, through his compliance and cooperation, has demonstrated that he learned his lesson. And it will not protect public safety, which is not at risk by his continued presence in the community. In sum, violating Mr. Goodman and placing him in prison would exceed what is necessary to achieve the rehabilitative and safety purposes of supervised release. *See Esteras v. United States*, 606 U.S. 185, 196 (2025) (describing deterrence, incapacitation, and rehabilitation "forward-looking ends" of supervised release). The Court should instead dismiss the pending charges rather than revoke supervised release.

For those reasons, we respectfully request that the Court terminate supervision for Mr. Goodman or, in the alternative, dismiss the pending violations without any extension or modification of his supervision term. We thank the Court for its consideration.

Respectfully submitted,
/s/ _____
Benjamin Yaster
Federal Defenders of New York, Inc.
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
(718) 330-1291
*Counsel for Andrew Goodman*

Encls.  Exhibits A-B

cc:    Counsel of record (via ECF)
       Heather Clark, Probation Dep't (via email)

4